GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
By:     NATASHA W. TELEANU
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2528
Fax No. (212) 637-2786
*Attorney for the United States of America*

BARBARA D. UNDERWOOD
Attorney General for the
State of New York
By:     ABIGAIL ROSNER
Assistant Attorney General
28 Liberty Street
19th Floor
New York, New York 10005
Tel. No. (212) 416-8922
Fax No. (212) 416-6007
*Attorneys for the State of New York and*
*the Commissioner of the New York State*
*Department of Environmental Conservation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

UNITED STATES OF AMERICA;
STATE OF NEW YORK; AND BASIL SEGGOS, as
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION,

               Plaintiffs,

        v.

CITY OF MOUNT VERNON,

              Defendant

-------------------------------------------------------------------- x

**COMPLAINT**

18 Civ. 5845

ECF Case

The United States of America ("United States"), by and through its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of New York ("New York" or the "State") and Basil Seggos, as Commissioner of the New York Department of Environmental Conservation ("DEC"), by and through their attorney, Barbara D. Underwood, Attorney General for the State of New York, allege for their complaint against defendant City of Mount Vernon (the "City" or "Mount Vernon") as follows:

## INTRODUCTION

1.      The Hutchinson and Bronx Rivers are key New York waterways. The Hutchinson River forms in Scarsdale, New York, and flows into the Eastchester Bay in the Bronx. The Hutchinson River forms the eastern border of Mount Vernon and winds past Pelham Bay Park, which includes Orchard Beach, the Bronx's sole public beach. The Bronx River flows for 23 miles, past White Plains, New York, and forms the border between Yonkers and Mount Vernon, divides the East Bronx from the West Bronx, and empties into the East River.

2.      For years, the City of Mount Vernon has discharged raw sewage and other illicit pollutants from its storm sewer system into the Hutchinson and Bronx Rivers. These illegal discharges result from Mount Vernon's failure to comply with Clean Water Act storm sewer permit requirements, including its obligation to protect water quality by developing and enforcing a program to eliminate the discharge of unpermitted pollutants from its storm sewer system. Specifically, the City has long violated the requirement that it implement and enforce a program to detect and eliminate illicit pollutants going *into* its storm sewer system, so as to prevent those pollutants from travelling through the storm sewers and being discharged *out of* the

storm sewers and into the waters of the United States and the State. The City has also violated related program and reporting requirements.

3.     Mount Vernon's actions violate the federal Clean Water Act, the New York Environmental Conservation Law, and the "general permit" applicable to "municipal separate storm sewer systems" ("MS4s") such as Mount Vernon's. The City has also failed to comply with almost all of the requirements of two administrative orders issued by EPA to compel the City to come into compliance.

4.     The United States brings this action to compel Mount Vernon to comply with the Clean Water Act, including the general permit governing the City's MS4, and EPA's administrative orders, and to recover civil penalties for the City's violations.

5.     New York and DEC bring this action to compel Mount Vernon to comply with the New York Environmental Conservation Law and the permit governing the City's MS4, and to recover penalties for Mount Vernon's non-compliance to date.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over EPA's claims under 28 U.S.C. §§ 1331, 1334, and 1345, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b). The Court has supplemental jurisdiction over New York's and DEC's claims under 28 U.S.C. § 1367.

7.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1395 because the violations alleged below arose in the Southern District of New York and because the City of Mount Vernon is located in this district.

## THE PARTIES

8.     Plaintiffs are the United States on behalf of EPA, the State of New York, and

Basil Seggos, as Commissioner of the New York State Department of Environmental

Conservation.

9.      Defendant is the City of Mount Vernon. Mount Vernon is a municipal

corporation duly chartered under the laws of the State of New York, located in Westchester

County. Mount Vernon is a "municipality" as defined in Section 502(4) of the Clean Water

Act, 33 U.S.C. § 1362(4) and New York Environmental Conservation Law § 1-0303(1), and

a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C.

§ 1362(5) and New York Environmental Conservation Law §§ 1-0303(18) and 17-0105(1).

## STATUTORY AND REGULATORY BACKGROUND

### *The Clean Water Act and State Law Discharge Prohibitions*

10.      The purpose of the Clean Water Act is to "restore and maintain the chemical,

physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve

this end, the statute generally prohibits "the discharge of any pollutant by any person,"

except when done in compliance with other sections of the Clean Water Act. 33 U.S.C.

§§ 1311(a), 1342. The term "discharge of pollutants" includes "any addition of any pollutant

to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "pollutant"

includes "sewage." 33 U.S.C. § 1362(6).

11.      New York Environmental Conservation Law ("E.C.L.") Article 17, entitled

"Water Pollution Control," declares that the public policy of New York is to "require the use

of all known available and reasonable methods to prevent and control the pollution of the

waters of the state of New York." E.C.L. § 17-0101. Consistent with this public policy, it is

"unlawful to discharge pollutants to the waters of the state from any outlet or point source"

except when done in compliance with a New York State Department of Environmental

4

Conservation-issued permit, and unlawful to discharge pollutants in excess of the limits set by such a permit. *Id.* § 17-0803.

### NPDES Permits

12.     The principal Clean Water Act program authorizing the discharge of pollutants is the National Pollutant Discharge Elimination System ("NPDES") permit program established by Section 402 of the Clean Water Act. 33 U.S.C. § 1342(a).

13.     A NPDES permit authorizes the discharge of pollutants subject to various terms and conditions designed to ensure that the discharges remain consistent with the Clean Water Act's objectives of restoring and maintaining the integrity of the waters of the United States.

14.     In most cases, as permitted by Section 402(b) of the Clean Water Act, states have elected to implement the Clean Water Act and administer the NPDES program within their jurisdiction. 33 U.S.C. § 1342(b). New York has been authorized to administer the program in the State since October 28, 1975, and DEC is the agency charged with administration of the New York State NPDES program. NPDES permits issued and administered by DEC are referred to under state law as State Pollutant Discharge Elimination System ("SPDES") permits. E.C.L. § 17-0105(13).

15.     EPA is authorized to issue administrative orders requiring municipalities to comply with the conditions and requirements of a NPDES permit (including a SPDES permit). 33 U.S.C. § 1319(a).

### MS4s and the MS4 General Permit

16.     Municipal separate storm sewer systems, or MS4s, are municipal sewer systems that collect water from rainfall and runoff, and discharge the water into navigable

waters without treatment.

17.     Because an MS4 discharges pollutants into waters of the United States (and, additionally, within New York, to the waters of the State), a municipality owning or operating an MS4 must obtain coverage under, and comply with, a NPDES permit. The applicable NPDES permit governing MS4s in the State of New York for the period from May 1, 2010, until April 30, 2015, was DEC's Municipal Separate Storm Sewer Systems General Permit, Permit No. GP-0-10-002 (the "2010 Permit"). The applicable NPDES permit governing MS4s in the State of New York beginning May 1, 2015, was DEC's Municipal Separate Storm Sewer Systems General Permit, Permit No. GP-0-15-003 (the "2015 Permit"). MS4 operators become subject to the applicable permit when they submit a notice of intent to be so covered. Municipalities covered under the 2010 permit as of May 1, 2015, automatically became covered under the 2015 permit when they submitted their 2014 Annual Report, which was due in June 2015. 2015 Permit, at Part II.C.

18.     The 2010 and 2015 Permits authorize municipalities to discharge certain pollutants from their MS4s only if the municipalities comply with various requirements contained in the permits. One central requirement of the Permits is a prohibition on illicit discharges *into* the MS4. An "illicit discharge," is "any discharge to a municipal separate storm sewer that is not composed entirely of storm water, except discharges authorized under a NPDES permit (other than the NPDES permit for discharges from the municipal separate storm sewer) and discharges resulting from fire fighting activities." 40 C.F.R. § 122.26(b)(2). Illicit discharges can include pollutants that affect water quality in the receiving waters, including raw sewage.

19.    To prevent unpermitted discharges by the MS4, the MS4 General Permit requires the owner or operator of a small municipal separate storm sewer system to develop, implement, and enforce a program to detect and eliminate illicit discharges into the MS4 and comply with related program and reporting requirements (collectively appearing at Part VII.A.3, subparts (a) through (m), and Part V.C of the MS4 General Permit, and collectively referred to herein as the "Illicit Discharge Detection and Elimination Program").

20.    Specifically, the Illicit Discharge Detection and Elimination Program requires MS4 operators to, among other things: (i) develop, implement, and enforce a program to detect and eliminate illicit discharges into the MS4; (ii) develop and maintain a map showing outfall locations, all surface waters receiving outfall discharges, and storm sewersheds; (iii) field verify MS4 outfall locations; (iv) conduct an outfall reconnaissance inventory every five years; (v) map new outfalls as they are constructed or newly identified; (vi) prohibit illicit discharges into the MS4 and implement appropriate enforcement procedures and actions through a law, ordinance, or other regulatory mechanism; (vii) develop and implement a program to detect, address, and eliminate non-stormwater discharges; (viii) inform the public about the hazards associated with illegal discharge; (ix) address the categories of non-stormwater discharges; (x) develop, record, periodically assess, and modify, as needed, measurable goals; (xi) select and implement measures to reduce the amount of pollutants of concern in stormwater discharges; and (xii) report on program implementation in an annual report due to be filed by June 1 of each year.

### *Clean Water Act and State Law Enforcement Provisions*

21.    The Administrator of the EPA may commence a civil action for appropriate relief when any person discharges pollutants into navigable waters without a permit or

violates the terms or conditions of a NPDES permit, including a permit issued by a state

authorized to administer the NPDES program. 33 U.S.C. § 1319(b).

22.    The Commissioner of the DEC may institute proceedings to compel

compliance with Article 17, Titles 7 and 8 of the New York Environmental Conservation

Law, including enforcement against noncompliance with SPDES permits. E.C.L. §§ 71-

1929(1) and 1931. Injunctive relief also is authorized by Section 71-1931 of the New York

Environmental Conservation Law.

23.    The Clean Water Act and the New York Environmental Conservation Law

also contain penalty provisions that permit monetary recovery for violations.

24.    As to EPA, any person who violates any permit issued under Section 402 of

the Clean Water Act, or any EPA order issued under 309(b) of the Clean Water Act is liable

for civil penalties of up to $37,500 per day for violations occurring between January 12,

2009, and November 2, 2015, up to $53,484 per day for violations occurring after November

2, 2015, and assessed on or after January 15, 2018. 33 U.S.C. § 1319(d); 28 U.S.C. § 2461;

31 U.S.C. § 3701; 40 C.F.R. Part 19; 8 Fed. Reg. 66644 (Nov. 6, 2013); 81 Fed. Reg. 43091

(July 7, 2016); and 83 Fed. Reg. 1190 (Jan. 10, 2018).

25.    Under the New York Environmental Conservation Law, Mount Vernon is

liable to New York for maximum civil penalties of $37,500 per day for each violation. N.Y.

E.C.L. § 71-1929.

## FACTUAL BACKGROUND

### *The City's Failure to Comply with its MS4 Permits*

26.    The City owns and operates an MS4 that comprises numerous catch basins in

which storm water is collected, 525,000 feet of connecting pipe segments, and

approximately 33 outfalls from which storm water is discharged. The City's outfalls

discharge into the Hutchinson and Bronx Rivers, both of which are waters of the United

States, as well as waters of New York State.

27.     This MS4 qualifies as a "small MS4" in an "urbanized area" under applicable

regulations. Accordingly, the Clean Water Act and New York State Environmental

Conservation Law Article 17, Title 8, and corresponding regulations, require Mount Vernon

to obtain and maintain permit coverage for its MS4. *See* 40 C.F.R. § 122.26(b)(16); 40

C.F.R. § 122.32(a)(1); E.C.L. § 17-0808; 6 N.Y.C.R.R. § 750-1.4(b).

28.     Mount Vernon originally obtained permit coverage for its MS4 on March 10,

2003, by submitting a notice of intent to be bound by the permit then in effect. Mount

Vernon thereafter automatically became covered by subsequent permits, including the 2010

Permit (from May 1, 2010, through April 30, 2015) and the 2015 Permit (on an after May 1,

2015). *See, e.g.*, 2015 Permit, at Part II.C. Both the 2010 and 2015 Permits authorize the

City to discharge pollutants associated with stormwater from its MS4, so long as the City

complies with the requirements of the 2010 and 2015 Permits.

29.     Both the 2010 and 2015 Permits require the City to develop, implement, and

enforce a fully compliant Storm Water Management Program that includes an Illicit

Discharge Detection and Elimination Program.

30.     Since at least as early as January 2012, the City has not implemented or

enforced Storm Water Management and Illicit Discharge Detection and Elimination

Programs for its MS4.

***Discharges of Raw Sewage***

31.     As a result of its failure to implement an Illicit Discharge Detection and

Elimination Program, there have been numerous occasions when the City's sanitary sewer

system—*i.e.*, the City's sewer system for transporting sewage requiring treatment, which is

separate from its MS4, which collects and discharges water—has discharged raw sewage

into the MS4, and that raw sewage was then discharged via the MS4 into waters of the

United States and the State.

32.     The City's sanitary sewer system comprises over 105 miles of piping and

associated manholes, and transports raw sewage collected from within the City to the

Westchester County interceptor trunk sewer line, where it is then conveyed to the

Westchester County Department of Environmental Facilities Yonkers Joint Wastewater

Treatment Plant for treatment.

33.     Mount Vernon has been discharging raw sewage from the MS4 into waters of

the United States and the State. First, during an inspection on September 12, 2012, EPA

received documentation of discharges of raw sewage from the Lorraine Avenue MS4 Outfall

into the Hutchinson River. These discharges resulted from Mount Vernon's sanitary sewer

system discharging sewage from the City's sanitary sewer at Esplanade and Lorraine

Avenues, to the MS4, beginning on or about January 10, 2012, and continuing through at

least February 21, 2012. These discharges of raw sewage *into* the MS4 led to discharges of

raw sewage *from* the MS4 into the Hutchinson River during this period.

34.     Second, during the same inspection, EPA inspectors obtained evidence of

discharges of raw sewage from the Stevens Avenue MS4 Outfall into the Bronx River.

These discharges again resulted from Mount Vernon's sanitary sewer system discharging

sewage from the City's sanitary sewer on Stevens Avenue, between Wilson Place and Fifth Avenue, to the MS4, beginning on or about June 30, 2012, and continuing through at least July 27, 2012. These discharges of raw sewage *into* the MS4 again led to discharges of raw sewage *from* the MS4 into the Bronx River during this period.

35.   Third, during an MS4 compliance inspection on April 9 and 10, 2013, EPA inspectors observed what appeared to be raw sewage discharges from MS4 Outfall Nos. 11, 24, 30, 33, 51, and 53 into the Hutchinson and Bronx Rivers, and determined that a follow-up sampling inspection should be performed.

36.   Fourth, during a "dry weather" sampling inspection on September 9 and 10, 2013, EPA took discharge samples from MS4 Outfall Nos. 24, 30, 33, 51, and 53, as well as one unmapped outfall into the Hutchinson and Bronx Rivers. On September 26, 2013, based on the findings and analyses of the samples taken, EPA detected fecal contaminants, which is an indication that raw sewage was being discharged into the Hutchinson and Bronx Rivers.

37.   On information and belief, because of Mount Vernon's continual failure to implement and enforce an Illicit Discharge Detection and Elimination Program and the poor condition of its sanitary sewer system, additional discharges of raw sewage into waters of the United States and the State are highly likely to have occurred.

38.   Mount Vernon did not have coverage under a SPDES permit for the sanitary sewage discharges discovered during these inspections.

*Failure to Implement and Enforce an*
*Illicit Discharge Detection and Elimination Program*

39.     These inspections and subsequent communications with Mount Vernon demonstrate that Mount Vernon is, and has long been, in noncompliance with its MS4 permit by failing to implement and enforce a comprehensive Illicit Discharge Detection and Elimination Program.

40.     If the City had been properly implementing and enforcing an Illicit Discharge Detection and Elimination Program during these times it would have discovered and repaired the breakdowns that led to these raw sewage discharges, and these discharges would not have occurred.

41.     Specifically, Mount Vernon has failed to implement and enforce a program to detect and eliminate illicit discharges flowing into its MS4, in violation of Part VII.A.3.a of the MS4 General Permit.

42.     Mount Vernon has failed to maintain a map showing all outfall locations, including the location of the outfall at Metro Green LLC, in violation of Part VII.A.3.b of the MS4 General Permit. In addition, Mount Vernon's outfall map does not show the location of all surface waters receiving the City's outfall discharges, or the City's storm sewersheds.

43.     Upon information and belief, as well as EPA's review of Mount Vernon's Annual Reports, the City has not conducted an outfall reconnaissance inventory at all MS4 outfalls within the last five years, in violation of Parts VII.A.3.c and d of the MS4 General Permit.

44.     Mount Vernon has failed to effectively implement a program to detect and address non-stormwater discharges. The City's available equipment, staff, and funding are inadequate and its procedures for eliminating illicit discharges are out-of-date, in violation of Part VII.A.3.g of the MS4 General Permit.

45.     Upon information and belief, Mount Vernon has failed to adequately inform the public about the hazards associated with illegal discharges, in violation of Part VII.A.3.h of the MS4 General Permit.

46.     Mount Vernon has failed to address non-stormwater discharges and flows, in violation of Part VII.A.3.i of the MS4 General Permit.

47.     Mount Vernon has failed to adequately address and adapt measurable goals regarding illicit discharge detection and elimination, including the reduction of discharge of pollutants to the maximum extent practicable, in violation of Parts V.A and VII.A.3.j of the MS4 General Permit.

48.     Upon information and belief, Mount Vernon has failed to select and implement measures to reduce the amount of pollutants of concern in stormwater discharges, in violation of Part VII.A.3.k of the MS4 General Permit.

49.     Furthermore, in addition to failing to undertake the above measures, Mount Vernon has failed entirely to submit the last two Annual Reports, due in June 2018, and June 2017, respectively, and submitted each of the four prior reports months late.

50.     The City's discharge of raw sewage into waters of the United States and the State resulted from its failure to implement and enforce an Illicit Discharge Detection and Elimination Program, in violation of the MS4 General Permit.

*The City's Failure to Comply with EPA's Administrative Orders*

51.     On February 25, 2014, EPA issued the City an Administrative Order (the "2014 Order"). The 2014 Order required the City to develop and implement a Storm Water Management Program for its MS4, including an Illicit Discharge Detection and Elimination Program, by July 31, 2014. In addition, the 2014 Order required the City to complete a "track-down" of the MS4 system to identify possible illicit discharges by June 30, 2015. The 2014 Order also required Mount Vernon to develop a Capacity, Management, Operation and Maintenance Program ("O&M Program") for the sanitary sewer system, to prevent discharges from that system to the MS4, by August 31, 2014, and implement it by December 31, 2014.

52.     To date, the City has failed to implement a Storm Water Management Program as required by the 2014 Order. Specifically, the City has failed to (i) develop procedures for identifying and locating illicit discharges (*i.e.*, "track down") in violation of the MS4 General Permit Part VII.A.3(g); (ii) submit semi-annual progress reports to EPA and DEC outlining all activities undertaken to comply with the requirements of the 2014 Order; (iii) submit a final report summarizing all activities to be taken to come into compliance with the MS4 General Permit; (iv) submit a complete engineering report detailing the elimination of illicit connections; (v) identify and submit a list of sanitary sewer system problem areas, including a complete engineering report detailing a completion date for each project; (vi) implement the sanitary sewer system problem area project schedule; (vii) complete the problem area projects necessary to eliminate unauthorized sewage discharges from the sanitary sewer system; (viii) submit semi-annual progress reports outlining all activities undertaken to implement the O&M Program; and (ix) submit

to EPA and DEC a final report summarizing all activities taken to develop and implement the O&M Program.

53.     On March 8, 2016, EPA issued a second Administrative Order (the "2016 Order"), which included a revised schedule for the remaining compliance deadlines, including deadlines that the City had previously missed. The City was ordered to complete all track-down work for the MS4 by October 31, 2016, and to submit a final engineering report to EPA and DEC, summarizing all activities to be taken to come into compliance with the MS4 General Permit, for review and approval by November 30, 2016. The City was ordered to implement its O&M Program by June 30, 2016, and submit a final report, summarizing all activities taken to develop and implement the O&M Program, to EPA and DEC by December 31, 2021.

54.     The new deadlines in the 2016 Order were developed with the input and verbal agreement of City officials.

55.     The City has failed to comply with the 2016 Order. Specifically, the City failed to (i) develop procedures for identifying and locating illicit discharges (*i.e.*, "track down") in violation of the MS4 General Permit Part VII.A.3(g); (ii) submit semi-annual progress reports to EPA and DEC outlining all activities undertaken to comply with the requirements of the 2014 Order; (iii) submit a final report summarizing all activities to be taken to come into compliance with the MS4 General Permit; (iv) submit a complete engineering report detailing the elimination of illicit connections; (v) identify and submit a list of sanitary sewer system problem areas, including a complete engineering report detailing a completion date for each project; (vi) implement the sanitary sewer system problem area project schedule; (vii) complete the problem area projects necessary to

eliminate unauthorized sewage discharges from the sanitary sewer system; (viii) submit semi-annual progress reports outlining all activities undertaken to implement the O&M Program; and (ix) submit to EPA and DEC a final report summarizing all activities taken to develop and implement the O&M Program.

## FIRST CLAIM FOR RELIEF

### *Claim by the United States for Permit Violations*

56.     The allegations in paragraphs 1 through 55 are re-alleged as though set forth fully herein.

57.     The City's operation of its MS4 from May 1, 2010, to April 30, 2015, was subject to the 2010 Permit. Its operation of the MS4 beginning May 1, 2015, has been subject to the 2015 Permit.

58.     Both the 2010 and 2015 Permits require the City to have in place a Storm Water Management Program. As part of the Storm Water Management Program, the City was required to "implement and enforce a program to detect and eliminate illicit discharges" into the MS4. Illicit discharges include discharges of sanitary sewage. 40 C.F.R. § 122.26(b)(2).

59.     From at least January 10, 2012, to April 30, 2015, Mount Vernon failed to comply with the Illicit Discharge Detection and Elimination Program provisions of the 2010 Permit, and since May 1, 2015, it has failed to comply with the Illicit Discharge Detection and Elimination Program provisions of the 2015 Permit.

60.     The City is liable to the United States for civil penalties for each day of each violation of the 2010 and 2015 Permits occurring on or after the date five years prior to the filing of this action.

61.     Unless enjoined by an order of the Court, the City will continue to violate the Illicit Discharge Detection and Elimination Program requirements of the 2015 Permit.

**SECOND CLAIM FOR RELIEF**

*Claim by the State of New York and DEC for Permit Violations*

62.     The allegations in paragraphs 1 through 61 are re-alleged as though set forth fully herein.

63.     The City's operation of its MS4 from May 1, 2010, to April 30, 2015, was subject to the 2010 Permit. Its operation of the MS4 beginning May 1, 2015, has been subject to the 2015 Permit.

64.     Both the 2010 and 2015 Permits require the City to have in place a Storm Water Management Program. As part of the Storm Water Management Program, the City was required to "implement and enforce a program to detect and eliminate illicit discharges" under Part VII.A.3.l of the MS4 General Permit.

65.      From at least January 10, 2012, to April 30, 2015, Mount Vernon failed to comply with the Illicit Discharge Detection and Elimination Program provisions of the 2010 Permit, and since May 1, 2015, it has failed to comply with the Illicit Discharge Detection and Elimination Program provisions of the 2015 Permit.

66.     The City is liable to New York and DEC for civil penalties for each day of each violation of the 2010 and 2015 Permits occurring on or after three years prior to the filing of this action.

67.     Unless enjoined by an order of the Court, the City will continue to violate the Illicit Discharge Detection and Elimination Program requirements of the 2015 Permit.

## THIRD CLAIM FOR RELIEF

### *Claim by the State of New York and DEC for Discharges of Pollutants*

68.     The allegations in paragraphs 1 through 67 are re-alleged as though set forth fully herein.

69.     E.C.L. Article 17 prohibits discharge of pollutants into waters of New York State without a SPDES permit or in a manner other than as prescribed in such permit. E.C.L. §§ 17-0701, 17-0803.

70.     The City has discharged raw sewage via its MS4 into the Hutchinson and Bronx Rivers since at least 2012, including on the occasions described above.

71.     The City's discharges of raw sewage from its MS4 were not in compliance with its 2010 and 2015 Permits, since, as described above, the City failed to prevent illicit discharges into the MS4 and failed to implement and enforce a program to detect and address non-stormwater discharges, as required under Part VII.A.3, paragraphs f and g, of the MS4 General Permit in effect at the time of the discharges. Indeed, as described above, the City's failures to comply with its Permits allowed the discharges to occur.

72.     The City's discharges of raw sewage from its MS4 into the waters of the State while being in noncompliance with the MS4 General Permit, were unpermitted discharges of pollutants in violation of E.C.L. Sections 17-701 and 17-803.

73.     The City is liable to New York and DEC for civil penalties for violations for each day of each unpermitted discharge of raw sewage that occurred on or after three years prior to the filing of this action.

74.     Unless enjoined by an order of the Court, Mount Vernon will continue to discharge pollutants from its MS4 into the waters of the State in violation of E.C.L. Sections

17-701 and 17-803.

## FOURTH CLAIM FOR RELIEF

### *Claim by the United States for*
### *Violation of EPA Administrative Orders*

75.     The allegations in paragraphs 1 through 74 are re-alleged as though set forth fully herein.

76.     EPA issued the 2014 Order and the 2016 Order under its authority provided by Section 309(b) of the Clean Water Act to compel the City to comply with the Clean Water Act and the 2010 and 2015 MS4 General Permits.

77.     The City has violated the 2014 and 2016 Orders, and continues to violate the 2016 Order.

78.     The City is liable to the United States for civil penalties for each day of each violation of the 2014 and 2016 Orders occurring on or after the date five years prior to the filing of this action.

79.     Unless enjoined by an order of the Court, Mount Vernon will continue to violate the 2016 Order.

## PRAYER FOR RELIEF

WHEREFORE, the United States, the State of New York, and DEC respectfully request that this Court:

a.     Enjoin the City to implement and enforce an Illicit Discharge Detection and Elimination Program, as required by the 2015 Permit;

b.     Enjoin the City to cease discharging pollutants via its MS4 into waters of the United States and the State, except as authorized by the MS4 General Permit;

     c.      Enjoin the City to comply with the terms of EPA's 2016 Administrative Order;

     d.      Order the City to pay the United States a civil penalty not to exceed $37,500 per day for each violation of the 2010 and 2015 Permits and each violation of EPA's 2014 and 2016 Administrative Orders, for each day of violation between June 28, 2013, and November 2, 2015, and $53,484 per day for each violation and illicit discharge that occurred after November 2, 2015.

     e.      Order the City to pay the State of New York and DEC a civil penalty not to exceed $37,500 per day per violation for each violation of the MS4 Permit and each illegal discharge occurring after June 28, 2015.

     f.      Award the United States, the State of New York, and DEC their costs in this action; and

     g.      Grant such other and further relief as the interests of justice may require.

Dated: New York, New York    Respectfully submitted,
   June 28, 2018


        GEOFFREY S. BERMAN
        United States Attorney
        *Attorney for the United States of America*


      By:  s/ Natasha W. Teleanu
        NATASHA W. TELEANU
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel. No. (212) 637-2528
        Fax No. (212) 637-2786
        Email: Natasha.Teleanu@usdoj.gov


        JEFFREY H. WOOD
        Acting Assistant Attorney General
        U.S. Department of Justice
        Environment and Natural Resources Division

Of Counsel:
TIMOTHY MURPHY
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, New York 10007


        BARBARA D. UNDERWOOD
        Attorney General for the
        State of New York
        *Attorney for the State of New York and DEC*


      By:  s/ Abigail Rosner
        Abigail Rosner
        Assistant Attorney General
        28 Liberty Street
        19th Floor
        New York, New York 10005
        Tel. No. (212) 416-8922
        Fax No. (212) 416-6007
        Email: Abigail.Rosner@ag.ny.gov