UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA; STATE OF NEW YORK; AND BASIL SEGGOS, AS COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, | : : : : : | |
| | : | |
| Plaintiffs, | : | Case No. 18 Civ. 5845 (CS) |
| | : | |
| v. | : | |
| | : | |
| CITY OF MOUNT VERNON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.        RECITALS ................................................................................................................. 1
II.       JURISDICTION AND VENUE ................................................................................. 3
III.      ADMISSIONS ........................................................................................................... 4
IV.       APPLICABILITY ...................................................................................................... 5
V.        EFFECT ON PRIOR INJUNCTIVE RELIEF AND REMEDIAL FINES ................... 6
VI.       DEFINITIONS........................................................................................................... 7
VII.      CIVIL PENALTY ...................................................................................................... 9
VIII.     COMPLIANCE REQUIREMENTS .......................................................................... 10
IX.       REPORTING REQUIREMENTS ............................................................................ 22
X.        STIPULATED PENALTIES .................................................................................... 24
XI.       FORCE MAJEURE ................................................................................................. 27
XII.      DISPUTE RESOLUTION ....................................................................................... 29
XIII.     INFORMATION COLLECTION AND RETENTION............................................... 32
XIV.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................... 34
XV.       COSTS .................................................................................................................... 35
XVI.      NOTICES ................................................................................................................ 36
XVII.     EFFECTIVE DATE ................................................................................................. 38
XVIII.    RETENTION OF JURISDICTION ........................................................................... 38
XIX.      MODIFICATION ..................................................................................................... 38
XX.       TERMINATION....................................................................................................... 39
XXI.      PUBLIC PARTICIPATION ..................................................................................... 40
XXII.     SIGNATORIES/SERVICE....................................................................................... 40
XXIII.    INTEGRATION ....................................................................................................... 41
XXIV.    FINAL JUDGMENT ................................................................................................ 41
XXV.     EXHIBITS ............................................................................................................... 41

## I.     RECITALS

WHEREAS, Plaintiffs, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), the State of New York ("State"), and Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation ("DEC" and, collectively with the State, "New York"), filed a complaint ("Complaint") against Defendant, the City of Mount Vernon ("Defendant");

WHEREAS, the United States alleges, among other things, that Defendant has violated and continues to violate the applicable Clean Water Act (the "CWA") permit governing Municipal Separate Storm Sewers ("MS4s") and applicable EPA Administrative Orders, including by failing to implement and enforce an Illicit Discharge Detection and Elimination program ("IDDE Program") consistent with applicable regulations and the applicable general permit ("MS4 General Permit") and including with respect to sanitary sewage entering Mount Vernon's MS4 (the "Mount Vernon MS4");

WHEREAS, New York alleges, among other things, that Defendant has violated and continues to violate applicable provisions of New York Environmental Conservation Law, Article 17, and the MS4 General Permit;

WHEREAS, the United States and New York assert that they are entitled to injunctive relief against, and the payment of civil penalties by, Defendant with respect to the conduct alleged in the Complaint;

WHEREAS, on September 21, 2020, the Court granted Plaintiffs summary judgment on the issue of liability as to all of Plaintiffs' claims, entered a permanent injunction, and deferred the determination of a civil penalty to permit Defendant to focus its efforts on compliance-related work ordered by the Court;

WHEREAS, the Court thereafter entered additional orders regarding compliance with the Court's September 21, 2020 order, including establishing a regime of remedial fines payable to the Court for violations of court orders [ECF Nos. 90, 97, 101, 109, 110, 124];

WHEREAS, Defendant has made progress on compliance obligations under the CWA, New York Environmental Conservation Law, the MS4 General Permit, and the Court's orders, but additional compliance work remains;

WHEREAS, Defendant represents that the repair work required by this Consent Decree to bring the Mt. Vernon MS4 into durable compliance with the CWA, New York Environmental Conservation Law, and the MS4 General Permit is likely to cost in excess of $100 million;

WHEREAS, New York and certain of its agencies have provided or committed to provide financial assistance exceeding $160 million to Defendant to fund work on the City's sewers, including work required to come into compliance with the Court's orders and Defendant's obligations under the Clean Water Act, New York Environmental Conservation Law, and the MS4 General Permit;

WHEREAS, pursuant to a Memorandum of Agreement among the State, Defendant, and the County of Westchester, dated April 15, 2022, the County of Westchester has agreed, "at no cost to the County," to "serve as administrator by aiding and obtaining, disbursing and/or managing for the benefit of the City" certain funding, to "provide assistance by contracting for engineering, construction, consulting assistance and oversight, and related services," "to provide engineering design, construction assistance, and financial management," and to provide other supportive services with respect to sewer repair work;

WHEREAS, Defendant represents that the extended compliance schedule contained herein is necessary because of, among other things, the significant capital costs associated with coming into compliance;

WHEREAS, the United States, New York, and the Defendant (collectively, the "Parties") are aware of the environmental injustices confronting the citizens of the City of Mount Vernon, and the Parties desire to work collaboratively to improve water quality and eliminate unpermitted pollutants from entering the Mount Vernon MS4 and being discharged into the waters of the United States and the State;

WHEREAS, the United States, New York, and Defendant intend this Consent Decree to supersede prior injunctive relief issued by the Court and the remedial fines framework previously imposed by the Court, as provided in Section V below.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid further litigation between the United States, New York, and Defendant, and is fair, reasonable, and in the public interest;

NOW, THEREFORE, with the consent of the Parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## II.     JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over the United States' claims pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355; subject-matter jurisdiction over New York's claims pursuant to 28 U.S.C. § 1367; and personal jurisdiction over the United States, New York, and Defendant.

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) because Defendant is located in this District and the events giving rise to the claims in the Complaint arose in this District.

3.      For purposes of this Consent Decree, or any action or proceeding to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over Defendant, this Consent Decree, and any such action or proceeding to enforce this Consent Decree and also consents to venue in the Southern District of New York.

### III.    ADMISSIONS

4.      Defendant admits, acknowledges, and accepts responsibility for the following:

a.      Defendant owns and operates a municipal separate storm sewer system (the "Mount Vernon MS4") that comprises approximately 3,200 catch basins in which stormwater is collected, approximately 525,000 feet of connecting pipe segments, and approximately 78 outfalls from which stormwater is discharged.

b.      The Mount Vernon MS4 is subject to the Clean Water Act and New York Environmental Conservation Law, Article 17.  Pursuant to those statutes and relevant regulations, Defendant was required to obtain coverage under the applicable permit.

c.      Defendant originally obtained permit coverage for the Mount Vernon MS4 pursuant to the applicable Municipal Separate Storm Sewer Systems ("MS4") General Permit governing MS4s on March 10, 2003, and automatically became covered by subsequent permits in 2010, and again in 2015.  Defendant was required to comply with this General Permit in operating the Mount Vernon MS4.

d.      Pursuant to its permit, Defendant was required to develop, implement, and enforce a fully compliant Stormwater Management Program that includes an Illicit Discharge Detection and Elimination Program.

e.      Since at least 2013, Defendant has not been in compliance with the General Permit because it has not fully implemented and enforced an Illicit Discharge Detection and Elimination Program.  Among other things:

i.      Defendant has not provided funding, equipment and staffing levels necessary to implement and enforce an Illicit Discharge Detection and Elimination Program.

    ii.    Defendant did not complete an outfall reconnaissance inventory for all MS4 outfalls until 2022.

    iii.    Defendant submitted annual reports months later than the deadlines in June 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, and 2022.

    iv.    Defendant did not submit accurate information in its 2017 and 2018 Annual Reports regarding its completions of the Outfall Reconnaissance Inventory.

f.    Moreover, at least up to and including the time the Complaint was filed, Defendant also failed to meet the following permit requirements:

    i.    Defendant did not maintain a map showing all outfall locations, all surface waters receiving outfall discharges, and all storm sewersheds.

    ii.    Defendant did not adopt measurable goals for the detection, elimination and reduction of illicit discharges.

    iii.    Defendant did not adequately inform the public about the hazards of illegal discharges.

    iv.    Defendant did not select and implement measures to reduce the amount of pollutants of concern in storm water discharges.

g.    The Mount Vernon MS4 has discharged and at times continues to discharge untreated sewage into the Bronx and Hutchinson Rivers.

h.    Defendant did not comply with two administrative orders issued by EPA to compel Defendant's compliance with the General Permit and the Clean Water Act.

## IV.    APPLICABILITY

5.    The obligations of this Consent Decree apply to and are binding upon the United States and New York, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

6.    Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor or expert retained to perform work required under this Consent

Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## V.    EFFECT ON PRIOR INJUNCTIVE RELIEF AND REMEDIAL FINES

8.    As of the Effective Date, this Consent Decree replaces, amends, and supersedes all remaining injunctive obligations imposed on Defendant under the Court's prior orders appearing as Docket Entry Nos. 74, 90, 97, and 109, including compliance deadlines for unmet tasks or projects, which shall have no further effect.  For avoidance of doubt, the initial paragraph of the order appearing at Docket Entry No. 74, which makes certain findings regarding jurisdiction and venue; incorporates by reference the Court's ruling on the record dated September 21, 2020; and grants Plaintiffs' motion for summary judgment as to liability is unaffected.

9.    As of the Effective Date, Defendants' obligations with respect to remedial fines are modified as follows:

a.    All remedial fines accrued and unpaid as of the Effective Date will be discharged.

b.    This Consent Decree (including the stipulated penalties provisions in Section X) replaces, amends, and supersedes all remaining obligations, other than as provided in (a), under the Court's prior orders establishing the framework of remedial fines and setting deadlines for payment of such fines.

10.    The United States and New York agree that, from the Date of Lodging until the earlier of the Effective Date or the Court's denial of a motion to enter this Consent Decree, they will not seek entry of orders requiring payment of additional remedial fines under the Third

Remedial Order, ECF No. 97.  The agreement provided in the prior sentence will terminate in the event that the Court denies entry of the Consent Decree, in which case the United States and New York will be free to pursue all available remedies, under the Third Remedial Order or otherwise.

## VI.    DEFINITIONS

11.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "CWA" means the Clean Water Act, 33 U.S.C. §§ 1311 to 1388;

b.    "CMOM" means the most recent of (i) the Capacity, Management, Operation and Maintenance program for Defendant's sanitary sewer system that was approved by EPA and DEC and appears as Exhibit A to this Decree, and (ii) any amended, updated, or superseding CMOM approved by EPA and DEC after entry of this Decree.

c.    "Complaint" means the complaint filed by the United States and New York in this action;

d.    "Consent Decree" or "Decree" means this Decree;

e.    "Date of Lodging" means the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York;

f.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

g.    "DEC" means the New York State Department of Environmental Conservation;

h.    "Defendant" means the City of Mount Vernon, and any successors or assigns;

i. "Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York;

j. "DOJ" means the United States Department of Justice, including the U.S. Attorney's Office for the Southern District of New York, and any of its successor departments or agencies;

k. "Effective Date" means the definition provided in Section XVII;

l. "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

m. "IDDE" or "Illicit Discharge Detection and Elimination Program" is a program that, pursuant to the MS4 General Permit and 40 C.F.R. § 122.26, the owner or operator of a small municipal separate storm sewer system must develop, implement, and enforce, to detect and eliminate illicit discharges into the MS4 and comply with related program and reporting requirements set forth in the MS4 General Permit;

n. "Illicit discharge" means any discharge to a municipal separate storm sewer that is not composed entirely of stormwater, except discharges pursuant to a NPDES permit (other than the NPDES permit for discharges from the municipal separate storm sewer) and discharges resulting from fire fighting activities, as provided by 40 C.F.R. § 122.26(b)(2);

o. "Illicit Discharge Action Plan" means the Illicit Discharge Action Plan that was approved by EPA and DEC and appears as Exhibit B to this Decree and all other Illicit Discharge Action Plans required by Paragraph 23;

p. "Mount Vernon MS4" means the MS4 owned and operated by Defendant;

q. "MS4" means a municipal separate storm sewer system;

r. "MS4 General Permit" means the then-current DEC Municipal Separate Storm Sewer Systems General Permit applicable to the Mount Vernon MS4, which is currently Permit No. GP-0-15-003;

s. "New York" means the State and DEC;

t. "Paragraph" means a portion of this Decree identified by an Arabic numeral, including any subparts thereof;

u. "Parties" means the United States, New York, and Defendant;

v.      "Section" means, except when citing to a provision of the CWA or other statute or regulation or provision of the MS4 General Permit, a portion of this Decree identified by a roman numeral;

w.      "Sewer System Corrective Action Plan" means a plan defined in paragraph 29;

x.      "Sewer System Evaluation Survey" means the inspection of sanitary sewers throughout the City pursuant to, and in compliance with, the Sewer System Evaluation Survey workplan approved by EPA and DEC and attached hereto as Exhibit C;

y.       "State" means the State of New York;

z.      "SWMP Plan" means the most recent of (i) Defendant's Stormwater Management Program Plan that was approved by EPA and DEC and appears as Exhibit D to this Decree, and (ii) any amended, updated, or superseding Stormwater Management Program Plan approved by EPA and DEC after entry of this Decree;

aa.     "Trackdown" means identifying and locating illicit discharges into the MS4; and

bb.     "United States" means the United States of America, acting on behalf of EPA.

## VII.   CIVIL PENALTY

12.     Within 30 Days after the Effective Date, Defendant shall pay the sum of $200,000 as a civil penalty, of which $100,000 shall be paid to the United States and $100,000 shall be paid to the State.

13.     Defendant shall pay the portion of the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the United States Attorney's Office for the Southern District of New York after the Effective Date.  The payment instructions will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments to the United States required to be made in accordance with this Consent Decree.

14.     At the time of payment to the United States, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ by email in accordance with Section XVI; and (iii) to EPA in accordance with Section XIV.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America, et al. v. City of Mount Vernon*, and shall refer to Civil Action No. 18 Civ. 5845 (S.D.N.Y.), the CDCS Number, and DJ# 90-5-1-1-11743.

15.     The portion of the civil penalty due to New York ($100,000) shall be suspended provided Defendant does not violate the terms and conditions of this Consent Decree.  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule component approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  The suspended portion of the civil penalty due to New York shall become due and owing on the 45th Day after performance is due, unless Defendant has corrected such violation prior to the 45th Day.  Defendant shall then pay the suspended portion of the civil penalty due to New York by tendering the appropriate sum by certified or bank check, made payable to "New York State Department of Environmental Conservation" and said certified or bank check shall be transmitted by overnight delivery service addressed to the Office of the New York State Attorney General, attention of Abigail Katowitz, Assistant Attorney General, Environmental Protection Bureau, 28 Liberty Street, 19th Floor, New York, NY 10005.

## VIII.   COMPLIANCE REQUIREMENTS

16.     **MS4 Outfalls.**  Defendant shall maintain an up-to-date comprehensive spreadsheet of all MS4 outfalls, including the following information: (i) unique outfall number;

(ii) outfall location; (iii) outfall geographic coordinates (latitude and longitude decimal degrees); (iv) outfall pipe or conduit size (inches), type, and material; and (v) receiving waterbody.  As new outfalls are constructed or newly discovered, Defendant shall update the MS4 outfall spreadsheet and provide the updated spreadsheet to EPA and DEC.

17.     Defendant shall maintain an up-to-date digital map utilizing Geographic Information System coordinates depicting names and locations of all outfalls, roads, surface waterbodies, and storm sewersheds.  As new outfalls are constructed or newly discovered, Defendant shall update the MS4 map and provide it to EPA and DEC.

18.     **Specific Construction and Repairs.** Defendant shall perform the following construction and repairs to address potential sources of illicit discharges to the MS4 by the dates indicated:

> a.     By December 31, 2023, Defendant shall complete construction of a pump station for the 3rd Street Corridor to eliminate sanitary backups, surcharges, and discharges into the MS4, and specifically, discharges to the Outfall 34 storm drain network.  Defendant shall continue to operate the temporary bypass pump to eliminate sanitary backups, surcharges, and discharges into the MS4 until the pump station is operational.

> b.     By December 31, 2024, Defendant shall upgrade and reinforce the Edison Avenue pump station to increase resiliency, prevent flooding and entry of illicit discharges into the MS4.

19.     **Outfall Reconnaissance Inventory.** Defendant completed an Outfall Reconnaissance Inventory required by the Court's orders on March 17, 2022.  On March 17, 2027, and every five years thereafter, Defendant shall complete an additional MS4 Outfall Reconnaissance Inventory and associated Trackdown for all MS4 outfalls in accordance with the MS4 General Permit.  An Outfall Reconnaissance Inventory and associated Trackdown shall include, but is not limited to, the following:

> a.     A visual, on the ground, inspection of all MS4 outfalls during dry weather (after at least 48 hours of no precipitation).  The visual inspection shall

include photographic documentation and a written description of observations including any flow observed coming from the outfall utilizing a standard inspection form.

b.      At the time of inspection, sample any observed dry weather flow at the outfall(s) and/or other structures and analyze for fecal coliform bacterial content.

c.      If the fecal coliform concentration sampled is 2,000 MPN/100ml or greater, and dry weather flow is observed at the time of inspection, Defendant shall conduct Trackdown in accordance with the MS4 General Permit to narrow down and identify the source of illicit discharges causing the flow.  Defendant shall document all observations using appropriate forms in accordance with the MS4 General Permit.  Trackdown shall be initiated no later than 45 days after the inspection.  Defendant shall provide documentation of Trackdown activities to show progress and illicit discharges eliminated, which may include CCTV inspection logs, smoke testing results, and/or dye testing results.

20.      **Additional Trackdown.**  In the event that Defendant becomes aware of illicit discharges to the Mount Vernon MS4 by means other than an Outfall Reconnaissance Inventory, Defendant shall promptly conduct Trackdown in accordance with the MS4 General Permit to identify and locate the source of the illicit discharges.  Trackdown shall be initiated no later than 45 days after Defendant becomes aware of such illicit discharges.

21.      **Cessation of Identified Sanitary Sewage Overflows Potentially Impacting MS4.**  Upon identifying a sanitary sewer overflow that could cause illicit discharges into the MS4, Defendant shall immediately initiate corrective action and, no later than 24 hours after discovery, shall take all practical steps to prevent further overflow at that location.

22.      **Elimination of Sources of Illicit Discharges.**  Upon identifying a source of illicit discharge to the MS4 by means of the Trackdown described in Paragraphs 19.c and 20, and except as provided in paragraph 25, Defendant shall, within 30 days, either (a) eliminate the source of illicit discharge or (b) submit to EPA and DEC an Illicit Discharge Action Plan pursuant to Paragraph 23.

23.    **Illicit Discharge Action Plan.** An Illicit Discharge Action Plan shall include the following:

   a.    A statement of each identified source of illicit discharge to the MS4 being addressed by the Illicit Discharge Action Plan.

   b.    A statement of the means by which Defendant will eliminate each source of illicit discharge (including enforcement, construction, repairs, and preventive actions).

   c.    A deadline by which Defendant will eliminate each source of the illicit discharge.  Such deadlines will be set to ensure prompt elimination of the source and protection of public health and the environment.  Deadlines shall presumptively be no later than 90 days absent good cause.  For deadlines greater that 30 days, Defendant shall also propose interim deadlines for material steps towards elimination of the source.

24.    Illicit Discharge Action Plans shall be subject to review and approval pursuant to the process described in Paragraph 53.  Upon its approval by EPA and DEC, an Illicit Discharge Action Plan shall become an enforceable requirement of this Consent Decree.

25.    Paragraphs 22 and 23 shall not apply to sources of illicit discharge that are also conditions that have been addressed in a Sewer System Corrective Action Plan pursuant to Paragraph 29.  As to such sources, a Sewer System Corrective Action Plan shall govern the means of and deadline for elimination of the source.

26.    **Confirmation of Elimination of Illicit Discharges**.  For each source of illicit discharge addressed pursuant to Paragraph 22 or 23, within 28 days of the completion of elimination of that source, Defendant shall confirm that the illicit discharges into Mt. Vernon's MS4 were eliminated, which shall be done by photo documentation, a dye test, smoke test, or through dry weather outfall sampling.  If this confirmation process indicates that additional sources of illicit discharge for a given outfall exist that were not resolved by elimination of a particular source, Defendant shall eliminate any additional sources causing the illicit discharges for that outfall and repeat the confirmation process.

27.     **Illicit Discharge Completion Reports**.  For each confirmation of the elimination of illicit discharges pursuant to paragraph 26, Defendant shall prepare an Illicit Discharge Completion Report documenting the confirmation of the elimination of illicit discharges as provided in paragraph 26. Each Illicit Discharge Completion Report shall be submitted to EPA and DEC as part of the next Quarterly Report required under Paragraph 56.

28.     **Sewer System Evaluation Survey**.  Defendant shall conduct a Sewer System Evaluation Survey consistent with the Sewer System Evaluation Survey workplan attached to this decree as Exhibit C, except that the deadline for completion of each of the three phases of investigation shall be as follows::  (i) Outfall 24, by May 31, 2025, (ii) Outfalls 15, 30, 31, 43, 48, 53, by November 30, 2025, and (iii) all remaining outfalls, by August 31, 2028.  During the course of the evaluation, if Defendant identifies a potentially blocked sewer segment, Defendant must investigate, respond to, document, and alleviate the sanitary sewer blockage, as specified in Section 6 of Defendant's CMOM.

29.     **Sewer System Corrective Action Plan**.  No later than 120 days after completion of each phase of the Sewer System Evaluation Survey investigation referred to in Paragraph 28, Defendant shall submit to EPA and DEC, for approval, a Sewer System Corrective Action Plan that addresses structural, operational, and maintenance issues for each of the conditions identified in that phase of the Sewer System Evaluation Survey investigation.  Each Sewer System Corrective Action Plan shall include:

a.     A statement of each condition identified in the Sewer System Evaluation Survey.

b.     A statement of the means by which Defendant will correct each condition identified in the Sewer System Evaluation Survey (including construction and repairs).

c.     A deadline by which Defendant will correct each condition.  Such deadlines will be set to ensure prompt correction of the condition and

protection of the public health and environment.  Deadlines shall presumptively be no later than 60 days absent good cause.  For deadlines greater that 60 days, Defendant shall also propose interim deadlines for material steps towards elimination of the source.

30.     A Sewer System Corrective Action Plan shall be subject to review and approval pursuant to the process described in Paragraph 53.  Upon its approval by EPA and DEC, a Sewer System Corrective Action Plan shall become an enforceable requirement of this Consent Decree.

31.     **Sewer System Corrective Action Plan Completion Reports.** No later than 60 days after the completion of correction of a condition identified in a Sewer System Corrective Action Plan, Defendant shall prepare a Sewer System Corrective Action Plan Completion Report that describes in detail: (i) all of the measures in the Sewer System Corrective Action Plan that Defendant implemented; (ii) all failures, if any, by Defendant to fully implement any measures in the Sewer System Corrective Action Plan and the reason(s) for such failures; and (iii) all failures, if any, by Defendant to prevent discharges of sewage to Defendant's MS4 from occurring, since the time Defendant commenced implementing the measures set forth in the Sewer System Corrective Action Plan, and the reasons for such failures. Each Sewer System Corrective Action Plan Completion Report shall be included in the next Quarterly Report, as required under Paragraph 56.

32.     To the extent Defendant receives funding earmarked for or otherwise intends to replace lead service lines, Defendant shall use reasonable efforts to align the schedule for such work with its work under any Illicit Discharge Action Plan or a Sewer System Corrective Action Plan to avoid duplicative construction work in a given street or area.

33.     **SWMP Plan.**  Defendant shall implement the SWMP Plan citywide.

34.     **CMOM.**  Defendant shall implement the CMOM citywide, including but not limited to: (i) employee training; (ii) complaint management program; (iii) pipe and manhole

inspection and cleaning; and (iv) pump station maintenance.  Defendant shall perform and document routine inspection and maintenance required by its CMOM Program for its Sanitary Sewer System, including daily pump station and hot spot inspections and maintenance, as specified in Sections 3.b and 3.c of Defendant's CMOM, and report on the status of this requirement in each semi-annual report.  Defendant shall further update its CMOM every year on or before December 31.

35.     **Sewage Spills Reporting**. Defendant shall document and report all sanitary sewage spills and overflows, whether or not they have reached the Mount Vernon MS4, to DEC within two hours of discovery (consistent with the NYS Sewage Pollution Right to Know Law requirements), with a copy to EPA, including the following information regarding the spill or overflow event: (i) date and time; (ii) location; (iii) duration; (iv) volume; (v) cause; (vi) corrective action; and (vii) specification of whether the sewage has entered or may enter an MS4 catch basin and/or a receiving waterbody.

36.     **Sanitary Sewer Overflow Response Plan**.  Defendant shall continue to implement its Sanitary Sewer Overflow Response Plan to mitigate or prevent sanitary sewer overflows, as required by Section 6 of the Defendant's CMOM.

37.     **Public Education and Other Actions.**  Defendant shall perform public education and outreach to businesses and the general public regarding causes and risks of sewer backups, illegal discharges and improper disposal of waste, and maintain records of notifications including the date, location and content of the outreach. In instances where residents have experienced multiple sewage backups, Defendant shall provide assistance to residents by identifying the cause of the backups.

38. **Equipment.**  Defendant shall maintain, in service, equipment and vehicles necessary to properly operate and maintain its storm sewer and sanitary sewer collection systems.

39. **Engineering Expert.**  Defendant shall retain, continuously until the date of termination of this Decree pursuant to Section XX, a qualified engineering firm (the "Engineering Expert") to assist Defendant in meeting its MS4 obligations and compliance with this Consent Decree.

40. Arcadis, an environmental consulting firm, is currently engaged as the Engineering Expert.  In the event that Defendant decides to retain a new Engineering Expert, no later than 10 Days prior to retaining the Engineering Expert, Defendant shall notify Plaintiffs of the identity (including name, address, title, company, and phone number) of the proposed Engineering Expert and providing a copy of the proposed retention agreement and scope of work.  If the United States or New York object to the proposed Engineering Expert or the form of retention agreement and scope of work, the dispute resolution provision of Section XII will apply.

41. Defendant shall make its staff available to meet with the Engineering Expert upon request, with reasonable notice, as required by the Engineering Expert to perform its responsibilities.

42. Defendant shall pay invoices of the Engineering Expert within 15 days of receipt of each invoice.

43. Plaintiffs are authorized to communicate directly with the Engineering Expert. Defendant agrees that it will not claim attorney-client privilege or attorney work-product protection applies to the work of the Engineering Expert.

44.    **Financial Expert.**   Defendant shall retain continuously until the date of termination of this Decree pursuant to Section XX, Defendant shall retain a qualified firm (the "Financial Expert") to provide technical advice, assistance, oversight, and organization to assist Defendant in procuring federal, state, and other funding. (the "Financial Expert").   This firm may be the same firm serving as Engineering Expert, if qualified.   Defendant shall work with the Financial Expert to obtain sources of funding necessary for the performance of work under this Consent Decree, which may include seeking available grants, assistance, and financing, including from the New York Clean Water State Revolving Fund.

45.    Arcadis is currently engaged as the Financial Expert.   In the event that Defendant decides to retain a new Financial Expert, no later than 10 Days prior to retaining the Financial Expert, Defendant shall notify Plaintiffs of the identity (including name, address, title, company, and phone number) of the proposed Financial Expert and providing a copy of the proposed retention agreement and scope of work.   If the United States or New York object to the proposed Financial Expert or the form of retention agreement and scope of work, the dispute resolution provision of Section XII will apply.

46.    Defendant shall make its staff available to meet with the Financial Expert upon request, with reasonable notice, as required by the Financial Expert to perform its responsibilities.

47.    Defendant shall pay invoices of the Financial Expert within 15 days of receipt of each invoice.

48.    Although the City anticipates receiving funding assistance to the extent available, compliance with its obligations under the MS4 General Permit and applicable regulations and the terms of this Consent Decree is not contingent upon or conditioned on the receipt of any federal

or state funds, and failure to obtain such funding assistance does not affect Defendant's obligations under this Decree.

49.     **Development of In-House Capacity.**  If Plaintiffs jointly agree that Defendant has demonstrated an in-house capacity to fully and reliably perform the functions of the Engineering Expert and/or Financial Expert described herein, Defendant may use City employees rather than outside firms as the Engineering Expert and/or Financial Expert.  Either Plaintiff may withdraw such agreement at any time, in which case Defendant may no longer use its employees in lieu of outside firms. In the event Defendant ceases using Defendant's employees and returns to using outside firms, Defendant shall either retain the previously used Expert(s) or select a new Engineering Expert or Financial Expert consistent with Paragraphs 40 and 45. Each Plaintiff's decision whether to permit these functions to remain in-house is in its sole discretion and not subject to Dispute Resolution or judicial review.

50.     **Environmental Justice and Transparency.**  Defendant shall evaluate any potential adverse impacts of construction, repairs, and other actions undertaken pursuant to this Consent Decree on overburdened and underserved populations.  Defendant shall schedule public meetings every quarter, beginning no later than 30 Days after the Effective Date, which may coincide with meetings of the City Council, and continuing through the duration of this Decree, to inform the public of any such potential adverse impacts, and provide an opportunity to members of the public to provide verbal comments, as well as submit comments in writing identifying any such potential adverse impacts.  Defendant shall ensure that the public meetings are accessible to the public, including the use of technology as appropriate.

51.     Defendant shall mitigate any such potential adverse impacts of construction, repairs, and other actions taken pursuant to this Consent Decree to the maximum extent possible consistent with such work.

52.     By 30 Days after the Effective Date, Defendant shall create a dedicated space on its Department of Public Works website that shall include, but not be limited to: (i) a copy of the Complaint and the Consent Decree; (ii) a copy of each report, inventory, and approved plan under this Decree; and (iii) contact information for a person to whom members of the public may direct any complaints related to the Mount Vernon MS4, including discharges of raw sewage or other illicit pollutants. Defendant shall post each new report, inventory, or plan within five days of its submission. This list of information to be provided on the website is not intended to be an exclusive one, and Defendant may, in its discretion, post other information on the website that would be useful for the public to be apprised of progress made under this Consent Decree.

53.     **Approval of Deliverables**.  After review of any plan, report, or other document that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with DEC (or EPA and DEC together, where the approval of each is specified as required under the CD) shall in writing either: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

       a.     If the submission is approved pursuant to Paragraph 53, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 53(b) or (c), Defendant shall, upon written direction from EPA, after consultation with DEC (or EPA and DEC together, where the approval of each is specified as required under the CD), take all actions required by the approved plan, report, or other document that EPA, after consultation with DEC (or EPA and DEC together, where the approval of each is specified as required

under the CD), determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution).

b.    If the submission is disapproved in whole or in part pursuant to Paragraph 53(c) or (d), Defendant shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other document, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

c.    If a resubmitted plan, report, or other document, or portion thereof, is disapproved in whole or in part, EPA, after consultation with DEC (or EPA and DEC together, where the approval of each is specified as required under the CD), may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA and DEC to seek stipulated penalties as provided in the preceding Paragraphs.

d.    Any stipulated penalties applicable to the original submission, as provided in Section X, shall accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

54.    If Defendant elects to invoke Dispute Resolution as set forth in Paragraphs 53(a) or 53(c), Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 72 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

55.    **Permits.**  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XI (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining,

any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## IX.   REPORTING REQUIREMENTS

56.   **Quarterly Reports.**  No later than thirty Days after the end of the quarter in which this Consent Decree is approved, and no later than thirty Days after the end of each subsequent quarter, Defendant shall submit to EPA and DEC a Quarterly Report that identifies all work completed or not completed during the preceding quarter that is required under this Consent Decree. These Quarterly Reports shall include a description of the status and progress of any work by Defendant or third parties in connection with this Consent Decree, as well any Illicit Discharge Completion Reports, Sewer System Corrective Action Plan Completion Reports, and documentation demonstrating CMOM and Sewer System Corrective Action Plan implementation, including a summary of sanitary sewer cleaning (including miles cleaned and locations), a summary of pipe and manhole inspections (including locations), and a summary of sanitary sewer overflows.  Plaintiffs, in their sole discretion, may consent to the submission of such reports at less frequent intervals; any such consent shall be revokable in their sole discretion.

57.   **MS4 Annual Reports.** By June 1 of each reporting year, the Defendant shall submit a complete and accurate MS4 Annual Report, required by the MS4 General Permit, to DEC, with a copy to EPA, as required by the MS4 General Permit.

58.   **Violation Report.**  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify DOJ and New York of such violation and its likely duration, in writing, within 10 Days of the Day Defendant first

becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XI (Force Majeure).

59.    **Immediate Threat Report.**  Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and DEC orally or by telephone at 212-637-5000 (EPA) and (914) 803-8141 and (518) 402-9660 (DEC) or by email to Chief of the Water Compliance Branch at mckenna.douglas@epa.gov (EPA) and Regional Water Engineer, R3 (White Plains/Tarrytown) at meena.george@dec.ny.gov and a copy to Director, Bureau of Water Compliance at edward.hampston@dec.ny.gov (DEC) as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph, elsewhere in the Decree, or under applicable law.

60.    **Certification.**  Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that

the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

61.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

62.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.    STIPULATED PENALTIES

63.    Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any workplan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

64.    **Late Payment of Civil Penalty.**  If Defendant fails to pay the civil penalty required to be paid under Section VII  (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that each payment is late.

65.    **Compliance Deadlines.**   The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VIII, except for the requirements identified in Paragraphs 16-17 (MS4 Outfalls), 27 (Illicit Discharge Completion

24

Reports), 31 (Sewer System Corrective Action Plan Completion Reports), 33 (SWMP Plan), 34

(CMOM), 35 (Sewage Spills Reporting), 36 (Sanitary Sewer Overflow Response Plan), and 37

(Public Education and Other Actions):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th Day |
| $1,000 | 30th through 45th Day |
| $1,500 | 46th Day and beyond |

66.     The following stipulated penalties shall accrue per violation per Day for each

violation of the requirements identified in Paragraphs 16-17 (MS4 Outfalls), 33 (SWMP Plan),

34 (CMOM), 36 (Sanitary Sewer Overflow Response Plan), and 37 (Public Education and Other

Actions):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 30th Day |
| $500 | 30th through 45th Day |
| $1,000 | 46th Day and beyond |

67.     **Reporting Requirements**.  The following stipulated penalties shall accrue per

violation per Day for each violation of the reporting requirements of Paragraphs 27 (Illicit

Discharge Completion Reports), 31 (Sewer System Corrective Action Plan Completion Reports),

35 (Sewage Spills Reporting), and Section IX (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 30th Day |
| $500 | 31st through 45th Day |
| $1,000 | 46th Day and beyond |

68.     Stipulated penalties under this Section shall begin to accrue on the Day after

performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated

penalties shall accrue simultaneously for separate violations of this Consent Decree.

69.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

70.      The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

71.     Stipulated penalties shall continue to accrue as provided in Paragraph 68 during any Dispute Resolution, but need not be paid until the following:

      a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

      b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

72.     **Payment.**  Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

73.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

74.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

75.     **<u>Non-Exclusivity of Remedy.</u>**  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI.     FORCE MAJEURE

76.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

77.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

shall provide notice orally or by telephone to 212-647-5000 (EPA) and (914)803-8141 and (518)402-9660 (DEC)  or by email to Chief of the Water Compliance Branch at mckenna.douglas@epa.gov (EPA) and Regional Water Engineer, R3 (White Plains/Tarrytown) at meena.george@dec.ny.gov and a copy to Director, Bureau of Water Compliance at edward.hampston@dec.ny.gov (DEC), within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA and DEC an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

78.     If EPA, after consultation with DEC, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for

performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

79.     If EPA, after consultation with DEC, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

80.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 76 and 77. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.    DISPUTE RESOLUTION

81.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or New York to enforce any obligation of Defendant arising under this Decree.

82.     **Informal Dispute Resolution.**  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Defendant sends the United States and New York a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with New York, shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

83.     **Formal Dispute Resolution.**  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending the United States and New York a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

84.     The United States, after consultation with New York, shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

85.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 10 Days of receipt of the

United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 54, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

86.     The United States and New York shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

87.     **<u>Standard of Review</u>**.

    a.     Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 83 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b.     Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 83, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

88.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 71.  If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.   INFORMATION COLLECTION AND RETENTION

89.     The United States, New York, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or DEC in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

90.     Upon request, Defendant shall provide EPA and DEC or their authorized representatives splits of any samples taken by Defendant.  Upon request, EPA and DEC shall provide Defendant splits of any samples taken by EPA or DEC.

91.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United

States or New York, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

92.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and New York at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or New York, Defendant shall deliver any such documents, records, or other information to the United States or New York. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

93.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

94.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or New York pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of

Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

95.     This Consent Decree resolves only the civil claims of the United States and New York for the violations alleged in the Complaint filed in this action through the date of lodging.

96.     The United States and New York reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or New York to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 86.  The United States and New York further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's conduct, whether related to the violations addressed in this Consent Decree or otherwise.

97.     In any subsequent administrative or judicial proceeding initiated by the United States or New York for injunctive relief, civil penalties, other appropriate relief relating to Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or New York in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 95.

98.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and New York do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, State, or local laws, regulations, or permits.

99.     Nothing in this Consent Decree limits the rights or defenses available under Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e), in the event that the laws of the State, as currently or hereafter enacted, may prevent Defendant from raising the revenues needed to comply with this Decree.

100.    This Consent Decree does not limit or affect the rights of Defendant or of the United States or New York against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

101.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.    COSTS

102.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and New York shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.   NOTICES

103.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by email to EPA and by mail or email to other parties, addressed as follows:

| | |
|---|---|
| As to DOJ by email: | robert.yalen@usdoj.gov |
| | and |
| | eescdcopy.enrd@usdoj.gov<br>Re: DJ# 90-5-1-1-11743 |
| As to DOJ by mail: | Robert William Yalen, AUSA<br>U.S. Attorney's Office – SDNY<br>86 Chambers St., 3rd Floor<br>New York, NY 10007 |
| | and |
| | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, DC  20044-7611<br>Re: DJ# 90-5-1-1-11743 |
| As to EPA by email: | mckenna.douglas@epa.gov<br>feinmark.phyllis@epa.gov |
| As to the State: | Abigail Katowitz, Assistant Attorney General<br>Office of the New York State Attorney General<br>28 Liberty Street – 19th Floor<br>New York, NY 10005 |
| As to DEC: | Dena Putnick, Esq.<br>Bureau Chief, Office of General Counsel<br>625 Broadway, 14th Floor<br>Albany, NY 12233-1500 |

Meena George, P.E.
Regional Water Engineer, Region 3
100 Hillside Ave
White Plains, NY 10603


As to Defendant:                    Commissioner Damani L. Bush
                                    Department of Public Works
                                    1 Roosevelt Square North
                                    Mount Vernon, New York 10550
                                    dbush@ci.mount-vernon.ny.us
                                    914.665.2492

                                    Brian G. Johnson
                                    Corporation Counsel
                                    City of Mount Vernon
                                    1 Roosevelt Square North
                                    Mount Vernon, New York 10550
                                    bjohnson@ci.mount-vernon.ny.us
                                    914.665.2331

                                    Curtis J. Woods
                                    City Engineer
                                    City of Mount Vernon
                                    1 Roosevelt Square North
                                    Mount Vernon, New York 10550
                                    cwoods@ci.mount-vernon.ny.us
                                    914.465-2991

                                    Darren M. Morton
                                    City Comptroller
                                    City of Mount Vernon
                                    1 Roosevelt Square North
                                    Mount Vernon, New York 10550
                                    DMorton@ci.mount-vernon.ny.us

104.    Any Party may, by written notice to the other Parties, change its designated notice

recipient, its notice address provided above, and whether notice shall be provided by email or US

Mail to that party.

105.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

106.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII. RETENTION OF JURISDICTION

107.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII and XIX, or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  MODIFICATION

108.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

109.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof

provided by Paragraph 87, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.    TERMINATION

110.    After Defendant (a) has completed the requirements of Paragraphs 16 through 18 and 20 to 30 (including implementation of all approved Illicit Discharge Action Plans under Paragraphs 22 through 24 and including implementation of the Sewer System Corrective Action Plan under Paragraphs 29 and 30); (b) has thereafter maintained continuous satisfactory compliance with this Consent Decree (including the SWMP as provided in Paragraph  and the CMOM as provided in Paragraph ) and the General Permit for a period of 12 months, and (c) has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States and New York a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

111.    Following receipt by the United States and New York of Defendant's Request for Termination, the United States and New York shall confer informally concerning the Request and any disagreement that the United States, New York, or Defendant may have as to whether Defendant has satisfactorily complied with the requirements for termination or partial termination of this Consent Decree.  If the United States, after consultation with New York, agrees that the Decree may be terminated, in whole or part, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree or part thereof.

112.    If the United States, after consultation with New York, does not agree that the Decree may be terminated as provided in the Request for Termination or Request for Partial

Termination, Defendant may invoke Dispute Resolution under Section XII.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 after service of its Request for Termination.

## XXI.   PUBLIC PARTICIPATION

113.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII.  SIGNATORIES/SERVICE

114.    Each undersigned representative of Defendant, DEC, and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

115.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court.

## XXIII. INTEGRATION

116.     This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXIV. FINAL JUDGMENT

117.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, New York, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXV.  EXHIBITS

118.     The following exhibits are attached to and part of this Consent Decree:

"Exhibit A" is the updated Capacity, Management, Operation and Maintenance program approved in April 2023.

"Exhibit B" is the Illicit Discharge Action Plan approved on March 14, 2023.

"Exhibit C" is Sewer System Evaluation Survey workplan approved on March 14, 2023.

"Exhibit D" is the Stormwater Management Program Plan approved on March 14, 2023.


Dated and entered this 3rd day of  January 2024 , 2023X

_____
CATHY SEIBEL
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:


9/18/23
Dated

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____

ROBERT WILLIAM YALEN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.: (212) 637-2722
Fax: (212) 637-2702
Email: robert.yalen@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:


Dated September 5, 2023

_____
PAUL SIMON
Regional Counsel
U.S. Environmental Protection Agency, Region 2


PHYLLIS FEINMARK
Chief, Water and General Law Branch

43

FOR THE STATE OF NEW YORK AND DEC:

9/7/2023
Dated

LETITIA JAMES
Attorney General of New York

By:  *Abigail Katowitz*

ABIGAIL KATOWITZ
Assistant Attorney General
28 Liberty Street
19th Floor
New York, New York 10005
Tel. No. (212) 416-8922
Fax No. (212) 416-6007
Email: Abigail.Katowitz@ag.ny.gov

FOR THE CITY OF MOUNT VERNON:

9/18/23
Dated

**SHAWYN PATTERSON-HOWARD**
MAYOR
City of Mount Vernon
1 Roosevelt Square North
Mount Vernon, New York 10550
MayorSPH@ci.mount-vernon.ny.us